UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUSSELL E.,

                                                                                                        DECISION AND ORDER

                        Plaintiff,

                                                                                                          22-CV-0760DGL

                         v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                        Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On August 10, 2015, plaintiff filed applications for a period of disability and disability insurance benefits, and for supplemental security income, alleging an inability to work since October 1, 2014. (Dkt. #6 at 25). His applications were initially denied, and a hearing was held, resulting in an unfavorable decision by Administrative Law Judge ("ALJ") Maria Herrero-Jaarsma on April 30, 2018. (Dkt. #6 at 208-25). Plaintiff appealed, and on April 2, 2019, the Appeals Council remanded the matter for further proceedings. (Dkt. #6 at 226-29).

Plaintiff appeared for a second hearing before ALJ Mary Mattimore, who issued an unfavorable decision on October 10, 2019. (Dkt. #6 at 230-50). Plaintiff appealed, and the Appeals Council again remanded the matter to ALJ Mattimore for rehearing, with instructions to resolve

factual discrepancies between the ALJ's RFC finding, and the vocational expert's testimony that plaintiff could return to his past relevant work. (Dkt. #6 at 251-55).

After a third hearing on May 20, 2021, ALJ Mattimore issued another unfavorable decision on June 16, 2021. (Dkt. #6 at 22-47). On August 23, 2022, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now appeals.

The plaintiff has moved pursuant to Fed. R. Civ. Proc. 12(c) for judgment vacating the ALJ's decision and remanding the matter for the calculation and payment of benefits (Dkt. #9), and the Commissioner has cross moved for judgment dismissing the complaint (Dkt. #14). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

I.   **The ALJ's Decision**

Plaintiff was 41 years old on the alleged onset date, with a high school education and past relevant work as a painter, boat repairer, and fiberglass repairer. (Dkt. #6 at 36). The ALJ found that plaintiff had the following severe impairments, not meeting or equaling a listed impairment: degenerative disc disease of the cervical spine, status-post an August 2017 C5-C6 anterior cervical discectomy and fusion; degenerative disc disease of the thoracic spine; degenerative disc disease of the lumbar spine; degenerative joint disease of both knees, status-post a September 2016

bilateral total knee replacement; degenerative joint disease of the left shoulder; degenerative joint disease of the right elbow; neuropathy; carpal tunnel syndrome; chronic pain syndrome; myofascial pain syndrome; fibromyalgia; and obesity. (Dkt. #6 at 28).

After reviewing the evidence of record, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform work at the sedentary level, with no more than occasional stooping, kneeling, crouching, crawling, climbing stairs, and climbing ramps. He can never climb ropes, ladders, or scaffolds. He can reach occasionally overhead, bilaterally, and can reach frequently in all other directions. He can frequently handle, finger, and feel, bilaterally. He cannot be exposed to hazardous machinery or unprotected heights. He requires the use of a cane occasionally for ambulation and balance. He can perform simple, routine work and make simple, work-related decisions. (Dkt. #6 at 30).

When presented with this RFC as a hypothetical at the hearing, vocational expert John Bopp testified that such an individual could not perform plaintiff's past relevant work, but would be able to perform the representative unskilled sedentary positions of document preparer, cutter/paster, and addresser. (Dkt. #6 at 37). The ALJ accordingly found plaintiff not disabled.

**II.     The ALJ's Assessment of Medical Opinion Evidence**

Initially, plaintiff argues that in assessing the evidence of record, the ALJ gave undue weight to the testimony of a medical expert.

Pursuant to the regulations which apply to plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§404.1520c(a), 416.920c(a). Rather, the Commissioner will consider all medical opinions in light of five factors: (1) supportability; (2) consistency with other evidence

3

of record; (3) the source's relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the nature, purpose and extent of the treating or examining relationship; (4) area of specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate his or her consideration of the medical opinion evidence, including how persuasive he or she finds each of the medical opinions of record, and must specifically explain how the supportability and consistency factors were weighed. *See Salleh D. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 427 at *9-*11 (W.D.N.Y. 2022). "Although an ALJ may afford various weights to portions of a medical source opinion, the ALJ is still required to provide reasoning to support [his or] her various weight determinations," in order to permit meaningful judicial review. *Yasmine P. v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 154176 at *10 (W.D.N.Y. 2022).

Plaintiff argues that the ALJ failed to properly weigh the opinion of a medical expert, orthopedic surgeon Dr. Ronald Kendrick, who reviewed the record and testified at the May 20, 2021 hearing concerning plaintiff's RFC. Specifically, Dr. Kendrick stated that plaintiff's diagnoses included knee replacement surgery, disc protrusions in the lumbar spine, cervical disc disease requiring discectomy and fusion surgery, fibromyalgia, right elbow osteoarthritis, rotator cuff tendinosis of the right shoulder, and obesity. (Dkt. #6 at 63-64). In light of that history and his review of the record, Dr. Kendrick assessed limitations to sedentary work, with additional restrictions in the upper extremities, including no more than frequent reaching, handling, or fingering, no more than occasional reaching overhead, and no more than occasional bending, crouching, crawling, stooping, kneeling, or climbing. Dr. Kendrick further indicated that plaintiff

could not work on ladders, ropes, or scaffolds, or around dangerous moving machinery or other workplace hazards. (Dkt. #6 at 64-67).

When asked by the ALJ whether plaintiff required the use of a cane for balance, Dr. Kendrick opined that he didn't see any evidence in the record to substantiate that. Upon questioning by plaintiff's counsel, Dr. Kendrick admitted that plaintiff's treatments for pain were among those generally recommended after other pain management methods had failed, and that it was "possible" that plaintiff's medical diagnoses could cause him to be off task for fifteen percent (15%) or more of the workday, or miss two days of work per month. (Dkt. #6 at 67-72).

The ALJ gave "significant weight" to Dr. Kendrick's opinion, in light of his professional expertise as an orthopedic surgeon, and the consistency of his opinion with imaging studies and examination notes throughout the record, which Dr. Kendrick had completely reviewed. (Dkt. #6 at 35-36).

Plaintiff argues that the ALJ erred in failing to specify precisely which portions of the record supported Dr. Kendrick's opinion, and suggests that Dr. Kendrick's opinion was not credible because his testimony did not cite to the specific portions of the record upon which each of his conclusions was based.

The Court disagrees. While an ALJ's failure to specify the reasoning for a finding can constitute reversible error, such error is harmless where the ALJ included sufficient discussion and analysis elsewhere in his decision, such that his reasoning for the finding could be readily gleaned, and meaningful review undertaken. *See Desirae P. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 109776 at *20-*21 (W.D.N.Y. 2023)(citing *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. 2010)).

Here, in the context of discussing the consistency and supportability of each medical opinion in comparison with the other evidence of record, the ALJ had already discussed and identified all of the imaging studies and examination notes upon which she relied, and against which she measured all of the medical opinion evidence. These included: imaging studies of plaintiff's neck showing marked narrowing of the C5-C6 interspace prior to surgery, and improvement in disc height thereafter; objective findings of 4/5 strength and intact sensation in the upper extremities; MRIs of plaintiff's cervical spine showing "mild" degenerative changes; MRIs and x-rays of plaintiff's lumbar spine showing "mild" changes; objective findings of 4+5/strength and retention of 120 degrees of flexion in both knees; MRIs and x-rays of the left shoulder revealing a rotator cuff tear in 2019 and "mild" changes otherwise, with 4/5 strength; objective findings of 4/5 grip strength with no abnormal findings on the most recent ECG of plaintiff's hands; and examination notes showing intermittent abnormal lumbar spine findings, intermittent negative straight leg raising test results, non-antalgic gait, intermittent use of a cane, and ability to climb on and off of an examination table without assistance. (Dkt. #6 at 31-34).

In the context of her decision, it is clear that when the ALJ concluded that Dr. Kendrick's opinion was consistent with the "imaging studies and examination notes," she was referring to the body of imaging studies and examination notes she had already detailed in the preceding pages. (Dkt. #6 at 35). Nor does the Court identify any factual error in the ALJ's finding that Dr. Kendrick's testimony was consistent with, and supported by, that evidence.

With respect to plaintiff's contention that Dr. Kendrick's testimony was not credible, it is well-settled that an ALJ may rely on the opinion of a non-examining medical expert in formulating the RFC, because such sources are deemed to be qualified experts in the field of social security disability. *See Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 337 (W.D.N.Y. 2018). *See also*

*Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on medical expert testimony in assessing claimant's functioning); *Hancock v. Barnhart*, 308 F. App'x 520, 521 (2d Cir. 2009) (an ALJ is permitted to rely on other opinions, including those of a medical expert, over treating source opinions). Given that Dr. Kendrick's testimony was well-supported by the longitudinal record, and that he was subject to cross-examination by plaintiff's attorney, I do not find that the ALJ's reliance upon it was misplaced. *See Desirae D. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 97111 at *14 (W.D.N.Y. 2021) (ALJ's reliance upon medical expert's testimony was proper where it was well-supported by the record, and cross-examined by plaintiff's counsel); *Mark W. v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 112042 at *16-*17 (W.D.N.Y. 2021) (ALJ's reliance upon medical expert's testimony was proper where the testimony was consistent with the record).

### III. The ALJ's Assessment of Plaintiff's Ambulation

Plaintiff also argues that the ALJ's finding that plaintiff required the "occasional" use of a cane for ambulation and balance was not sufficiently supported. Specifically, plaintiff notes that none of the medical opinions of record stated that plaintiff required the use of a cane at all, and that since even limitations which favor plaintiff must nonetheless be supported by substantial evidence, the ALJ's finding that plaintiff needed to use a cane was erroneous.

The ALJ's finding that plaintiff required the occasional use of a cane for ambulation and balance was manifestly based on medical evidence that plaintiff "intermittently uses a cane, [although] he generally presents to medical examinations without an assistive device," (Dkt. #6 at 30, 32, 33), and plaintiff's own testimony that "he generally uses a cane or other assistive device to ambulate." (Dkt. #6 at 31, 57-58). I find no reversible error in the ALJ's crediting of plaintiff's testimony and medical records attesting to his intermittent use of a cane, both of which sufficiently

support the ALJ's finding that plaintiff required the "occasional" use of a cane, defined as the ability to use a cane for up to 1/3 of the workday (that is, up to 2 hours and 40 minutes), to perform the "up to 2 hours total" of standing and walking required for sedentary work.

IV.   **The ALJ's Characterization of Plaintiff's Activities of Daily Living**

Plaintiff contends that the ALJ mischaracterized plaintiff's activities of daily living and thus improperly found that they were inconsistent with the level of limitation plaintiff claimed, in stating that plaintiff "tells his treating provider that he remains active by walking, hunting, performing tasks around the home, and removing snow," and "testified that he retains the ability to drive, care for a dog, tends [sic] to blueberries, prepare simple meals, use a riding lawnmower, and hunts [sic]." (Dkt. #6 at 34).

While the ALJ failed to mention that these each of activities is performed only occasionally or for a short duration (e.g., plaintiff testified that his hunting was limited to 60-90 minutes, 2-3 times per year, and that snow removal consisted of 15-20 minute stints on a tractor), I do not find that the ALJ's cursory summary amounted to a mischaracterization of plaintiff's testimony, or that plaintiff's activities of daily living, when properly understood only as short-lived or occasional, are inconsistent with the ALJ's finding that plaintiff retains the RFC to perform a limited range of sedentary work.

V.   **The ALJ's Assessment of Plaintiff's Ability to Perform Sustained Work**

Finally, plaintiff argues that the ALJ did not properly assess whether plaintiff's impairments permitted him to perform work on a regular and sustained basis, because the ALJ did not credit plaintiff's testimony that his medication side effects include memory and concentration difficulties, that he requires 6-7 naps of 45-minutes each, per day, and that he must frequently change position or find something to lean upon. Dr. Kendrick testified on cross-examination that

8

it was "possible" that an individual with plaintiff's medical profile might be off-task for more than 15% of the workday, or miss 2 days of work per month due to symptoms. (Dkt. #6 at 71-72). Plaintiff argues that in light of this testimony, the ALJ failed to give sufficient consideration to the impact plaintiff's impairments had on his ability to maintain minimal standards of attendance, pace, and productivity.

The Court disagrees. While Dr. Kendrick conceded to the theoretical possibility of distractions or attendance issues, he did not testify that plaintiff actually had such limitations, nor did any other medical sources indicate that plaintiff had limitations in these areas that would impact his ability to work. As such, the ALJ's determination that plaintiff had the RFC to perform work at a sustained pace, or and maintain minimum standards of attendance, pace and productivity, was not inconsistent with Dr. Kendrick's opinion, or otherwise unsupported by substantial evidence of record.

I have considered the rest of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, I find that the decision-appealed-from was supported by substantial evidence of record, and was not the product of legal error. Plaintiff's motion to vacate the ALJ's decision and remand the matter for the calculation and payment of benefits (Dkt. #9) is

denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted.

The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

    IT IS SO ORDERED.

                                            _____
                                            DAVID G. LARIMER
                                            United States District Judge

Dated:  Rochester, New York
         October 12, 2023.